USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  _10/14/2021_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ERIC ANDREW PEREZ,                             :
                                                              :
                Plaintiff,                          :
                                                              :
     -against-                                     :
                                                              :
EXPERIAN, *et al.*,                                :
                                                              :
            Defendants.                     :
                                                              :
-----------------------------------------------------------------------X

**REPORT &**
**RECOMMENDATION**

20-CV-9119 (PAE) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Paul A. Engelmayer, United States District Judge:**

     *Pro se* plaintiff Eric Andrew Perez brings this action alleging violations of the

Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act

("FDCPA"), and the Federal Trade Commission Act ("FTC Act") against Experian

Information Solutions ("Experian"), Equifax Information Services LLC ("Equifax"),

Trans Union, LLC ("Trans Union"), New York SMSA Limited Partnership d/b/a

Verizon Wireless ("Verizon"), Sequium Asset Solutions ("Sequium"), the Federal

Trade Commission ("FTC"), and Citibank, N.A. ("Citibank").[1]  Sequium has moved

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  Experian, Equifax, Trans Union, and Verizon ("joint defendants") have

jointly filed motion papers but under two different rules.  As Equifax has not yet

_____

[1] Citibank appears to have been served via certified return receipt to a registered
agent at the CT Corporation System but has not responded to the complaint to date.
Dkt. No. 19.  As discussed *infra*, the Court previously dismissed all claims against
the FTC.  Dkt. No. 11.

1

filed its answer, it has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, while Experian, Trans Union, and Verizon, which have each filed an answer, have moved for judgment on the pleadings pursuant to Rule 12(c).  For the reasons set forth below, I recommend that both motions be granted, but that Perez be given leave to file an amended complaint as to certain of his claims.

## I.  BACKGROUND

### A.  Perez's Allegations

The following facts are taken from the complaint.  Complaint ("Compl."), Dkt. No. 2.[2]  All of its factual allegations are accepted as true for purposes of both motions.  *See, e.g., Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015) (motion to dismiss); *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (motion for judgment on the pleadings).  Because Perez is proceeding *pro se*, the Court also considers allegations made for the first time in his response

---

[2] Attached to the complaint are exhibits that appear to be the credit reports issued by consumer reporting agency ("CRA") defendants Equifax, Experian, and Trans Union ("CRA defendants"), with annotations, presumably made by Perez, indicating that many of the outstanding debts listed on the reports are disputed, as well as emails sent by Perez to the FTC.  Compl., Exhibits ("Ex.") 1–12.  The exhibits are properly considered under Rule 10(c), which provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  In the context of a Rule 12(b)(6) motion, courts "may permissibly consider documents other than the complaint," including "[d]ocuments that are attached to the complaint or incorporated in it by reference."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  The same applies to Rule 12(c) motions.  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) ("[C]ourts may on a Rule 12(c) motion—just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint 'incorporate[s] by reference,' that is "integral" to the complaint . . . ." (citation omitted)).

opposing the motions. *See, e.g.*, *Saudager v. Walgreens Co.*, No. 18-CV-437 (KPF), 2019 WL 498349, at *1 n.1 (S.D.N.Y. Feb. 8, 2019) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

Perez was born on June 27, 1976. Compl., Ex. 4. He is a discharged United States Marine Corps veteran who suffers from post-traumatic stress disorder ("PTSD") and traumatic brain injury ("TBI"). Plaintiff's Opposition ("Pl. Opp."), Dkt. No. 73, at 1. Perez alleges that defendants have developed a "system of misreporting and manipulating credit files and scores for their own profit" (*id.* at 2) as part of a "civil criminal conspiracy" depriving him of his rights and charging him with "socioeconomic oppression . . . in construction and collusion with various federal and state agencies." Compl. ¶25; Pl. Opp. at 3.

Perez alleges the CRAs Experian, Equifax, and Trans Union have all misreported accounts to his credit file and inaccurately reported his credit. Compl. ¶¶27, 29. He alleges the following inaccuracies:

**Table 1: Alleged Inaccuracies on Experian Report**

|                      | Reported                       | Alleged by Perez                                                                 |
| -------------------- | ------------------------------ | -------------------------------------------------------------------------------- |
| Capital Bank         | $21                            | $0                                                                               |
| Verizon              | $421                           | $0                                                                               |
| Educational accounts | 4 accounts with 9 late payments | Educational account in forbearance and then disputed using the borrowers' defense application |

| Inquiries | 9 | 5 |
|---|---|---|

*Id.* ¶29, Ex. 1 at 23–44.[3]

**Table 2: Alleged Inaccuracies on Equifax Report**

|  | Reported | Alleged by Perez |
|---|---|---|
| Best Buy | $753 | $0 |
| Capital Bank | $136 | $0 |
| Lead Bank | $259 | $0 |

*Id.*; Ex. 1 at 44–65.

**Table 3: Alleged Inaccuracies on Trans Union Report[4]**

|  | Reported | Alleged by Perez |
|---|---|---|
| Capital Bank | $136 | $0 |
| Best Buy CBNA | $753 | $0 |
| "Self" | $259 | $100 |
| Educational loans | 4 loans paid on time, and 6 educational loans with 9 late payments | 4 loans "on time placed in forbearance borrowers defense application pending" |
| Inquiries | 7 | 5 |

---

[3] The page numbers cited are those produced by the Electronic Case Filing (ECF") system.

[4] Perez attaches a "Trans Union Credit Report as of 10-29-20."  However, it appears to be a duplicate of the Equifax Credit Report from October 14, 2020.  *See* Compl., Ex. 1 at 65–84.  For the purposes of the motion, the Court will take Perez's allegations in his Complaint as true reflections of the Trans Union credit report, although there is no report attached.  *See* Compl. ¶28.

*Id.* ¶29. Lastly, Perez alleges that Experian, Equifax, and Trans Union have misreported his employment history by providing an incomplete history of United Way of America, J & J Towers, Kew Forest, and Stream America despite Perez having additional employment history, although he does not specify which employers are missing. *Id.* ¶28. Experian lists United Way of America and JJ Auto Repair, *see* Ex. 1 at 43, and Equifax lists Fresh Direct as his employer, *see* Ex. 1 at 63.

Perez contends that the CRA defendants arbitrarily assigned him credit scores as part of a "scheme to disenfranchise en mass" by the CRA defendants and federal and state agencies. *Id.* ¶30. As part of the scheme, Perez alleges that the CRA defendants have assigned an "illegal synthetic identity to a confidential informant." *Id.* ¶31. Perez alleges that Citibank is also an active participant in the "alternate credit scheme." *Id.* ¶38. Additionally, he alleges that Verizon provided access to Perez's cable, internet, and cell phone accounts to informants and law enforcement without warrants and passed off the "debt of an unknown informant into his account and reported the debt to three credit bureaus after the debt was settled." *Id.* ¶¶35–36.

Perez has contacted Citibank, Verizon, and Sequium to dispute information that he believed was inaccurate and furnished to the CRAs. *Id.* ¶¶42, 47. Perez claims that he has provided information to validate that the debt was assigned to the wrong person, such as his driver's license, social security number, proof of residence, and proof of payment. *Id.* ¶43. Despite Perez's attempts to dispute the

information, Citibank, Verizon, and Sequium have allegedly failed to remove the

inaccurate information and continued to furnish it to the CRAs, without informing

them that the information is disputed by Perez.  *Id.* ¶¶44, 50.  Perez also asserts

that Sequium failed to issue him a debt settlement letter after his request.  *Id.* ¶37.[5]

Perez's credit file allegedly has several errors that he claims indicate proof of

manipulation and control.  Pl. Opp. at 6.  For example, Perez complains that his

gender is not included on the reports, his changes of physical addresses are delayed

and not reported at the same time, and he still receives Experian notifications for

new sex offenders added to his former zip code of 10304.  *Id.* at 6–7.[6]  Perez has

allegedly reported the scheme and his claims of identity theft to the FTC on more

than 12 occasions without any response.  Compl. ¶¶76–78; Exs. 2–12 (11 emails

from Perez to FTC from March 14, 2020 through October 6, 2020).  Perez contends

that as a result of the inaccuracy of his credit reports, he is unable to increase his

existing credit and was denied economic opportunities, including entrepreneurship

programs, more than 50 employment opportunities, and 30 opportunities for

personal credit.  Moreover, he alleges that he has suffered from character

---

[5] Debt settlement offers are letters that offer a specific amount of money in
exchange for forgiveness of the consumer's debt.  *See, e.g.*, *Cortez v. Forster &
Garbus, LLP*, 999 F.3d 151, 156 (2d Cir. 2021) (describing debt settlement offers).

[6] Experian offers Sex Offender Monitoring to inform users of all registered sex
offenders living within the user's area and notify the user when a new offender is
added.  *Non-Credit Monitoring Services*, EXPERIAN,
https://www.experianpartnersolutions.com/identity-management/non-credit/ (last
visited Oct. 12, 2021).

defamation and experienced pain and suffering over a ten-year period.  Compl. ¶¶79–83; Pl. Opp. at 6.

### B. Procedural History

Perez commenced this action on October 30, 2020, asserting claims under the FCRA, 15 U.S.C. §§ 1681 *et seq.*, against all defendants, including a violation of § 1681s-2(a) by furnishing information about him despite notice that it is inaccurate, and a violation of § 1681s-2(b) by failing to investigate upon notice of dispute and furnishing information without notice that the reported information is under investigation.  Compl. ¶¶42–45; 46–48.  He also asserts claims under the FDCPA, 15 U.S.C. §§ 1692-1692p, for the false representations by all defendants concerning the legal status of a debt.  *Id.* ¶¶53–54.  Perez seeks damages as well as declaratory and injunctive relief.  *Id.* ¶¶ 20–21.  Although Perez initially included the FTC as a defendant, the Court dismissed all claims against the FTC and all claims brought under the FTC, 15 U.S.C. § 45, in an Order of Service dated January 6, 2021.  Dkt. No. 11.

On May 14, 2021, Sequium moved for judgment on the pleadings pursuant to Rule 12(c), arguing that Perez fails to state a claim upon which relief may be granted.  Defendant Sequium's Brief in Support of its Motion ("Sequium Mem."), Dkt. No. 62.  In particular, Sequium argues that: (1) Perez's claims under § 1681s-2(a) fail because the FCRA does not provide Perez with a private right of action; (2) his claims under § 1681s-2(b) of the FCRA fail because Sequium did not act as a furnisher of information regarding the debt at issue; and (3) his claims under the

FDCPA fail because it does not have a requirement to issue debt settlement letters. Sequium Mem. at 1–2, 5.

On May 17, 2021, Equifax, Trans Union, Experian, and Verizon jointly filed motion papers. Defendants' Joint Memorandum of Law in Support of Their Motions ("Joint Defs. Mem."), Dkt. No. 65. As Experian, Trans Union, and Verizon have all filed answers to the complaint, they moved for judgment on the pleadings. *Id.* at 1 n.1. Equifax has not yet filed its answer and therefore moved to dismiss the complaint for failure to state a claim. *Id.* Specifically, they argue that Perez failed to state a claim for a violation of the FCRA because: (1) a CRA cannot be held liable for the reporting of employment information; (2) the inaccurate reporting claim is based on a false allegation that defendants were engaged in a criminal conspiracy; (3) Equifax, Experian, and Trans Union are not furnishers of information; (4) there is no private right of action to assert a claim under § 1681s-2(a) against Verizon; and (5) Perez failed to allege that Verizon was notified of Perez's dispute by any CRA as required by § 1681s-2(b). *Id.* at 1–2. The joint defendants also argue that Perez failed to state a claim for a violation of the FDCPA because they are not debt collectors. *Id.* at 2.[7]

On June 13, 2021, Perez submitted his response to the motions, restating his claims against the CRAs for failure to report his complete and accurate information

---

[7] Despite the parties' briefing on the issue (Joint Defs. Mem. at 13–14), Perez's criminal negligence claims were only alleged against the FTC and have already been dismissed. *See* Dkt. No. 11. Similarly, Perez's claims of character defamation under state law were also only made against the FTC and were also dismissed. *Id.*; Compl. ¶83. Therefore, the Court need not address those claims.

(Pl. Opp. at 3–4, 9–11), his claims against Verizon, *id.* at 12–13, and his claims against defendants as debt collectors, *id.* at 13–14.  On July 1, 2021, Sequium submitted reply papers.  Sequium's Reply Brief in Support Of Its Motion ("Sequium Reply"), Dkt. No. 75.  On July 2, 2021, the joint defendants submitted reply papers as well.  Defendants' Joint Reply to Plaintiff's Opposition ("Joint Defs. Reply"), Dkt. No. 76.

## II.  DISCUSSION

### A. Applicable Standards

#### 1.  Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must plead facts in his complaint that "state a claim to relief that is plausible on its face" and that satisfy Rule 8(a)(2).  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)).  A claim is facially plausible when there exists "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663 (citing *Twombly,* 550 U.S. at 556).  Nevertheless, this standard requires a plaintiff's pleadings to sufficiently "nudge[ ] [his] claims across the line from conceivable to plausible."  *Twombly,* 550 U.S. at 570.

When considering a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of

the plaintiff. *Littlejohn*, 795 F.3d at 306 (citing *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006)).  "A complaint need not include 'detailed factual allegations,' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *JCG v. Ercole,* No. 11-CV-6844 (CM) (JLC), 2014 WL 1630815, at *5 (S.D.N.Y. Apr. 24, 2014) (quoting *Iqbal,* 556 U.S. at 678) (internal quotations omitted), *adopted by* 2014 WL 2769120 (June 18, 2014).  A complaint containing only "conclusory allegations or legal conclusions masquerading as factual conclusions" will not survive a motion to dismiss. *Womack v. Capital Stack, LLC,* No. 18-CV-4192 (ALC), 2019 WL 4142740, at *3 (S.D.N.Y. Aug. 30, 2019) (quoting *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011)).

## 2.  Motion for Judgment on the Pleadings Pursuant to Rule 12(c)

Under the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  The standard for evaluating a motion for judgment on the pleadings under Rule 12(c) is the same as the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See, e.g.*, *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).  "To survive a Rule 12(c) motion, [a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).  In considering such motions, the court must take all factual allegations in the complaint as true and draw all

reasonable inferences in the non-moving party's favor.  *See, e.g.*, *Famous Horse Inc.*, 624 F.3d at 108.

### 3.   Standards Applicable to *Pro Se* Litigants

"A document filed *pro* se is to be liberally construed."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (internal quotations omitted)).  Courts within this Circuit grant *pro se* litigants a "'special solicitude' by interpreting a complaint filed *pro se* 'to raise the strongest claims that it suggests.'"  *Hardaway v. Hartford Pub. Works Dep't,*  879 F.3d 486, 489 (2d Cir. 2018) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).  However, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting *2 Moore's Federal Practice* § 12.31[1][b] (2005), at 12–61 (internal quotation marks omitted)).  Therefore, a court should "not hesitate to dismiss a *pro se* complaint if it fails altogether to satisfy the pleading standard."  *Henry v. Davis*, No. 10-CV-7575 (PAC) (JLC), 2011 WL 3295986, at *2 n.5 (S.D.N.Y. Aug. 1, 2011), *adopted by* 2011 WL 5006831 (Oct. 20, 2011).

With these standards in mind, the Court will discuss each of Perez's claims in turn, beginning with his claims under the FCRA.

### B. Claims under the Fair Credit Reporting Act

Perez contends that all of the defendants have violated the FCRA.  Compl. ¶¶39–51.  The FCRA regulates consumer credit reporting agencies to ensure accuracy, confidentiality, relevancy, and proper utilization of consumer credit information.  15 U.S.C. § 1681(b).  It "places distinct obligations on three types of

entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475 (DLC), 2002 WL 31106934, at *3 (S.D.N.Y. Sept 20, 2002) (citing 15 U.S.C. §§ 1681 *et seq*.). Perez alleges claims under the FCRA against both consumer reporting agencies (Experian, Equifax, and Trans Union) and alleged furnishers of information (Sequium and Verizon). Accordingly, the Court will address the two relevant types of obligations—first, obligations for furnishers of information, and then obligations for consumer reporting agencies.

### 1. Liability of furnishers of information

Although the primary function of the FCRA is to regulate the actions of comsumer reporting agencies like Equifax, Experian, and Trans Union, the FCRA also imposes obligations on parties that furnish information to such agencies. *See* 15 U.S.C. § 1681s-2. Courts in this Circuit have "interpreted [furnishers of information] to mean entities that transmit, to credit reporting agencies, information relating to debts owed by consumers." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 426 n.11 (S.D.N.Y. 2010) (internal quotation omitted) (citing *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 WL 1153623, at *4 (E.D.N.Y. May 16, 2005). "[T]hese obligations involve the duty to provide accurate information and to correct inaccurate information, 15 U.S.C. § 1681s–2(a), and to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency, § 1681s–2(b)." *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014) (citing *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012)). However, certain requirements are only triggered when a

furnisher of information receives notice of a credit dispute from specified parties.  If

a consumer files a dispute with the furnisher of the disputed information, under §

1681s-2(a)(8) the furnisher must investigate the dispute.  If a consumer files a

dispute with the consumer reporting agency, then both the consumer reporting

agency and the furnisher have a duty to investigate the dispute. 15 U.S.C. §§

1681i(a)(1)(A), 1681s-2(b).

### a.  Statutory Requirements

#### i.  The duty to provide accurate information and correct inaccurate information under § 1681s-2(a)

Perez alleges Verizon and Sequium have violated FCRA § 1681s-2(a).  Compl.

¶¶41–45. FCRA § 1681s-2(a) provides that a furnisher of information has a duty to

report information accurately to credit reporting agencies.  15 U.S.C. § 1681s-2(a).

Moreover, if a person, or creditor, learns that any reported information is

inaccurate, Subsection (a) obligates them to notify the credit reporting agency of the

inaccuracies and provide corrections.  15 U.S.C. § 1681s-2(a).  However, it is well-

settled that there is no private cause of action for alleged violations of Section

1681s-2(a).  *See, e.g., Longman*, 702 F.3d at 151 ("[T]he statute plainly restricts

enforcement of that provision to federal and state authorities.").  Enforcement of

FCRA § 1681s-2(a) is limited to government agencies and officials as the statute

provides that Subsection (a) "shall be enforced *exclusively* . . . by the Federal

agencies and officials and the State officials identified in section 1681s of this title."

15 U.S.C. § 1681s-2(d) (emphasis added).

Although Perez has alleged a violation of Subsection (a) of Section 1681s-2 of the FCRA, because that provision does not provide a private right of action, this claim fails as a matter of law.

### ii. The duty to investigate after receiving notice of a credit dispute from a consumer reporting agency under § 1681s-2(b)

Perez also alleges defendants have violated § 1681s-2(b) of the FCRA. Compl. ¶¶46–48. In contrast to § 1681s-2(a), which is triggered when a consumer sends a dispute directly to a furnisher of information, § 1681s-2(b) is triggered when the furnisher is notified by the CRA that a consumer disputes the accuracy of the furnished information. *Compare* 15 U.S.C. § 1681s-2(a)(8) *with* 15 U.S.C. § 1681s-2(b)(1).[8] Section 1681s-2(b) requires the furnisher to "conduct an investigation with respect to the disputed information," after receiving notice from a CRA. 15 U.S.C. § 1681s-2(b)(1); *see, e.g.*, *Redhead*, 2002 WL 31106934, at *4 ("The category of duties in [1681s-2(b)] governs the furnishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency."). Upon such notice, a furnisher must:

> (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency. . .; (3) report the results of the investigation to the consumer reporting agency; (4) where an investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . .;

---

[8] Although § 1681s-2(a) of the FCRA does not provide a private right of action, § 1681s-2(b) has been recognized to provide a private right of action for willful or negligent noncompliance with the statute. *See, e.g.*, *Nguyen v. Ridgewood Sav. Bank,* 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014) (collecting cases).

and (5) where the information is found to be inaccurate, incomplete, or unverifiable, promptly modify, delete, or permanently block the reporting of that information.

*Frederick v. Cap. One Bank (USA), N.A.,* No. 14-CV-5460 (AJN), 2018 WL 1583289, at *6 (S.D.N.Y. Mar. 27, 2018) (internal quotations omitted) (citing 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E)).

To satisfy a claim under § 1681s-2(b), a plaintiff must first establish that the defendant is a "furnisher of information" within the meaning of the statute.  *Id.* at *6.  Then, he must establish that: "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'"  *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012) (quoting *Redhead,* 2002 WL 31106934, at *5).  "Notice from an individual consumer, in the absence of notice from a credit reporting agency, is insufficient to trigger the duties contained in Subsection (b)."  *Kane,* 2005 WL 1153623, at *4; *see also O'Diah v. New York City*, No. 02-CV-274 (DLC), 2002 WL 1941179, at *13 (S.D.N.Y. Aug. 21, 2002) (§ 1681s-2(b) requires plaintiff to "show that the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information is disputed").

### b.  Perez failed to allege the CRAs are "furnishers of information" as defined under FCRA § 1681s-2(b).

Equifax, Experian, and Trans Union argue they are not "furnishers of information" under § 1681s-2(b) of the FCRA, as they are consumer reporting

agencies and therefore not liable under § 1681s-2(b).  Joint Defs. Mem. at 9.[9]  Perez

failed to allege in his complaint that the CRA defendants were furnishers of

information.  Moreover, in his opposition papers, Perez concedes that the "CRA

defendants are not furnishers of information."  Pl. Opp. at 11.  Because Perez does

not allege that the CRA defendants are furnishers of information, he fails to state a

plausible claim under Section 1681s-2(b) as against them and that claim should also

be dismissed.  *See Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460 (AJN),

2015 WL 5521769, at *6 (S.D.N.Y. Sept. 17, 2015), *opinion amended on

reconsideration sub nom. Frederick v. Cap. One (USA) N.A.*, No. 14-CV-5460 (AJN),

2015 WL 8484560 (Dec. 8, 2015) (dismissing for failure to allege defendants were

furnishers of information).

Accordingly, the Court recommends that all of Perez's claims under FCRA

§ 1681s-2(b) against Equifax, Experian, and Trans Union be dismissed.  However,

Verizon concedes it is a "furnisher of information" and therefore can be liable under

§ 1681s-2(b).  Joint Defs. Mem. at 10.  Additionally, Perez alleges sufficient facts to

support a reasonable inference that Sequium is a furnisher of information.  *See*

Compl. ¶14 ("As part of its debt collection activities, . . . Sequium . . . furnishes

---

[9] As defined in the FCRA, the term "consumer reporting agency" means "any person
which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly
engages in whole or in part in the practice of assembling or evaluating consumer
credit information or other information on consumers for the purpose of furnishing
consumer reports to third parties, and which uses any means or facility of interstate
commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C.
§ 1681a(f).

information to CRAs"). The Court will thus analyze the remaining claims against Verizon and Sequium as furnishers of information under the FCRA.

### c. Perez fails to state a claim against Verizon or Sequium under FCRA § 1681s-2(b).

In response to his allegations that they violated § 1681s-2(b), both Verizon and Sequium contend that Perez failed to allege that he disputed the information with a consumer reporting agency, who then reported the dispute to the furnishers of information (Verizon and Sequium). Joint Defs. Mem. at 11; Joint Defs. Reply at 7; Sequium Mem. at 5.[10] In his complaint, Perez alleges that he had reported disputes directly to Citibank, Verizon, and Sequium regarding information that they had furnished to the CRAs. Compl. ¶42. In his opposition papers, Perez further stated that he disputed "several accounts electronically and by mail" but it is unclear if he is referring to his communications with the FTC, the CRA defendants, or Verizon and Sequium. Pl. Opp. at 13. Perez also contends that he contacted Verizon directly to dispute the charges in Small Claims Court in the Bronx in 2019 and when Verizon "over charged him for his devices and bills," Perez notified them that he wanted "to pay [the charges] off prior to having these charges appear on his credit." *Id.* at 12–13. However, to state a § 1681s-2(b) claim, Perez must allege that Verizon and Sequium were contacted by a *consumer reporting*

---

[10] In its motion papers, Sequium Mem. at 5, Sequium cites to the declaration of its chief compliance officer and general counsel, *see* Dkt. No. 29-1, which it has attached to its answer, but on a motion for judgment on the pleadings, a court cannot consider matters outside the pleadings. Moreover, Sequium did not move in the alternative for summary judgment, or provide Perez with the appropriate notice under Local Rule 56.2 that it intended to do so. For these reasons, the Court has not considered this declaration in its review of the motion papers.

*agency* about a dispute, not contacted by Perez himself, and that those agencies followed up with a notice of dispute to Verizon and Sequium (which in turn must then conduct an investigation into the information in question).  *Kane*, 2005 WL 1153623, at *4 (granting motion to dismiss for failure to allege furnisher received notice of dispute from CRA).  This he has failed to do.

In sum, Perez's "furnishers of information" FCRA claims should be dismissed. Specifically, Perez's claim under 15 U.S.C. § 1681s-2(a) should be dismissed with prejudice, as that Subsection affords no private right of action and any amendment would be futile.  However, Perez's claim under 15 U.S.C. § 1681s-2(b) against Verizon and Sequium should be dismissed without prejudice to his filing an amended complaint, pleading all the necessary elements of a claim under that Subsection to the extent they exist, given that the complaint is difficult to parse through but suggests he might have a viable claim.  *See, e.g.*, *Branum v. Clark*, 927 F.2d 698, 705–06 (2d Cir. 1991) (where *pro se* pleading contained "the seeds" of viable claims, it should not be dismissed "without granting leave to amend at least once"); *Kane*, 2005 WL 1153623, at *11 (while plaintiff's complaint "le[ft] much to be desired," it was not "so clearly deficient that amendment would necessarily be futile").  Moreover, "[t]he Second Circuit has cautioned that district courts should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Olsson v. ABM Taxi Dispatch Laguardia Airport*, No. 18-CV-8815 (PGG),

2020 WL 5038742, at *3 (S.D.N.Y. Aug. 26, 2020) (internal quotations omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

### 2. Liability of credit reporting agencies

Perez also alleges claims under the FCRA against the CRA defendants. Compl. ¶¶39–48. Specifically, Perez alleges the CRA defendants violated § 1681s of the FCRA. However, as previously discussed, § 1681s-2(a) does not provide for a private cause of action and credit reporting agencies do not have a duty under § 1681s-2(b). In his opposition papers, Perez alleges that defendants "are not in compliance with the FCRA." Pl. Opp. at 12. Given its obligation to construe Perez's *pro se* complaint liberally, the Court will construe these allegations as making claims for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see* 15 U.S.C. § 1681n, violation of duties or requirements imposed under the FCRA for credit reporting agencies, specifically § 1681e(b) (requiring reasonable procedures to assure accuracy) and § 1681i(a) (requiring reinvestigation of disputed information). *See, e.g.*, *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 173 (S.D.N.Y. 2014) (construing complaint under Section 1681(f) not Section 1681-2(b) as "a context in which [his claims] make much more sense, and a context in which Plaintiff may have intended to assert them"); *Caraveo v. Nielsen Media Rsch., Inc.*, No. 01-CV-9609 (LBS) (RLE), 2003 WL 1745064, at *2 (S.D.N.Y. Mar. 31, 2003) ("At this stage of the litigation, *pro se* Plaintiff's citations to specific statutory provisions in his memoranda of law do not supersede the plain language of the complaint."), *aff'd sub nom. Caraveo v. U.S.E.E.O.C.*, 96 F. App'x 738 (2d Cir. 2004). In other words, construing Perez's allegations liberally, the complaint can be read to allege the CRA

defendants to be willfully, or in the alternative, negligently noncompliant, in violation of § 1681e(b) and § 1681i.  Accordingly, the Court will consider Perez's allegations in that light.

### a. Statutory Requirements under §§ 1681e(b) and 1681i

Section 1681e(b) imposes a duty on CRAs to "assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  To state a claim under Section 1681e(b), a plaintiff must allege that: "(1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury."  *Wimberly v. Experian Info. Sols.,* No. 18-CV-6058 (MKV), 2021 WL 326972, at *5 (S.D.N.Y. Feb. 1, 2021) (quoting *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019)).

When the accuracy of a report is in dispute, Section 1681i outlines specific procedures that CRAs must follow to ensure the proper reinvestigation of disputed information.  Section 1681i requires that if a consumer notifies a CRA of a dispute as to the accuracy of any item of information contained in his file, within 30 days of notification, the CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."  15 U.S.C. § 1681i(a)(1)(A); *Jones v. Experian Info. Solutions, Inc.,* 982 F. Supp. 2d 268, 272

(S.D.N.Y. 2013).  The Second Circuit has not directly addressed what constitutes a "reasonable reinvestigation" under section 1681i.  *Jones*, 982 F. Supp. 2d at 273.  However, courts in this District have noted that "the parameters of a reasonable investigation will . . . depend on the circumstances of a particular dispute." *Frydman v. Experian Info. Sols, Inc.*, No. 14-CV-9013 (PAC) (FM), 2016 WL 11483839, at *15 (S.D.N.Y. Aug. 11, 2016) (quoting *Cortez v. Trans Union, LLC,* 617 F.3d 688, 713 (3d Cir. 2010)), *adopted by* 2016 WL 5661596 (Sept. 30, 2016).  The reinvestigation requirement has demanded "more than (a) forwarding the dispute information onto the furnisher of information and (b) relying on the furnisher of information's response*." Gorman v. Experian Info. Sols., Inc.*, No. 07-CV-1846 (RPP), 2008 WL 4934047, at *5 (S.D.N.Y. Nov. 19, 2008) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)).  To state a claim under Section 1681i, the plaintiff must also allege that "the disputed information is inaccurate." *Khan*, 2019 WL 2492762, at *3.

The threshold question under both Sections 1681e(b) and 1681i "is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Id.* (collecting cases).  A credit report is inaccurate "either when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Wimberly*, 2021 WL 326972, at *5 (quoting *Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693 (PAE), 2016 WL 3538379, at *9 (S.D.N.Y. June 22, 2016)).  "Information provided by a

consumer reporting agency is misleading where it is 'open to an interpretation that is directly contradictory to the true information.'" *Id.* (quoting *Wagner v. TRW, Inc.*, 139 F.3d 898, 1998 WL 127812, at *1 (5th Cir. 1998)).

### b. Perez fails to state a claim against the CRA defendants under §§ 1681e(b) and 1681i.

Perez argues that the CRA defendants violated the FCRA by their failure to report his gender, address changes, and complete employment information.  Compl. ¶¶28–32; Pl. Opp. at 6-7.  The Court interprets these claims to assert violations under § 1681e(b) and § 1681i.  The CRA defendants did not address these specific statutory allegations in their motion papers, as in making such allegations, Perez cited to a different section of the FCRA.  Nevertheless, in arguing that Perez's claims against them under the FCRA should be dismissed, the CRA defendants contend that they do not have a duty to report gender or address changes (Joint Defs. Reply at 8) or to report "complete" employment information (Joint Defs. Mem. at 5–6).

### i. Failure to report gender and change of address

Perez argues that the CRA defendants violated the FCRA by failing to report his gender and changes of his physical addresses.  Pl. Opp. at 6. However, inaccuracies are only actionable if they affect an assessment of a consumer's credit, insurance, or employment and fit within the definition of a "consumer report" under the FCRA.  *See* 15 U.S.C. § 1681a(d)(1) (listing factors in establishing the consumer's eligibility); *Williams-Steele v. Trans Union*, No. 12-CV-0310 (GBD)(JCF), 2014 WL 1407670, at *4 (S.D.N.Y. Apr. 11, 2014) ("[N]o restriction is

put on the use of information that is not a 'consumer report' . . . Address

information on a consumer, for example, is not a consumer report because it is not

information that bears on any of the characteristics described in 15 U.S.C. §

1681a(d)(1).") (citing *Ali v. Vikar Management, Ltd.*, 994 F. Supp. 492, 497

(S.D.N.Y. 1998)), *adopted by* 2015 WL 576707 (Feb. 10, 2015), *aff'd sub nom.*

*Williams-Steele v. TransUnion*, 642 F. App'x 72 (2d Cir. 2016).   A "consumer report"

communicates information bearing on a consumer's "credit worthiness, credit

standing, credit capacity, character, general reputation, personal characteristics or

mode of living," which information is used, expected to be used, or collected for

purposes of establishing the consumer's eligibility for credit, insurance, and

employment, or for certain other limited purposes.   15 U.S.C. § 1681a(d)(1).   Perez's

gender and address history do not fit within the definition of a "consumer report"

nor does the Experian sex offender monitoring and notification tool.   Therefore,

Perez's allegations regarding his address changes and gender do not state a claim

for inaccurate information under the FCRA as a matter of law.   *See Williams-Steele*,

2014 WL 1407670, at *4 (recommending dismissal for claim based on "inaccurate

contact information").

### ii.  Incomplete employment history

Perez also contends that the CRA defendants have "deliberately and

maliciously reported plaintiff's incomplete work history for a number of years."

Compl. ¶28.   However, in order to state a cognizable claim, Perez would need to

allege that his incomplete work history has been "prejudicial to an assessment of

the plaintiff's eligibility for credit under the FCRA," or otherwise adversely affected

the other factors listed in § 1681a(d)(1).  *Williams-Steele*, 2015 WL 576714, at *2 ("Plaintiff's claim that her '[p]lace of employment [is] not [a]ccurate' is not actionable.").  Perez has not done so.  Thus, Perez has failed in his present pleading to state a claim under the FCRA for the reporting of incomplete work history.  This particular claim should be dismissed without prejudice to his filing an amended complaint, but only if he can provide the necessary information to show how the alleged reporting of his allegedly incomplete work history bore on his credit worthiness.

### c.  Perez fails to allege a violation of §§ 1681e and 1681i for inaccurate reporting of his trade lines.

Perez also alleges the CRAs reported inaccurate information in his trade lines, including his Capital Bank balance, Verizon Wireless balance, Best Buy balance, as well as other accounts.  Compl. ¶29; Ex. 1.[11]  He claims that the CRA defendants "do not conduct a meaningful investigation, or an investigation at all, when it receives a notice of dispute from a [sic]."  *Id.* ¶47.  The party providing notice to the CRA is omitted and the sentence is incomplete, so it is unclear if Perez's allegations refer to a notice from a consumer, as in Perez himself, or from a furnisher of information, such as Citibank or Verizon.  In his opposition papers, Perez states that he has notified Experian, Equifax, and Trans Union of inaccuracies in his reports "on at least a dozen cases" over a ten-year period, with "no action. . . taken on the part of any of these defendants."  Pl. Opp. at 6.  He also

---

[11] A trade line is a "record of activity for any type of credit extended to a borrower and reported to a credit reporting agency."  *Trade Line,* INVESTOPEDIA, https://www.investopedia.com/terms/t/trade-line.asp (last visited Oct. 12, 2021).

alleges that he filed "at least a dozen complaints within the last [six] years in reference to mistakes that he has discovered on his reports" that were "summarily dismissed." *Id*. at 11. Perez contends that Experian, Equifax, and Trans Union are all "complicit" in a scheme of misreporting. Compl. ¶32. The CRA defendants respond that Perez made no claim that they failed to meet their obligations under the FCRA, and instead only contends the issues with his credit report arise from a "criminal conspiracy." Joint Defs. Mem. at 7, 15. The Court construes Perez's claims to allege willful or negligent noncompliance with Section 1681e(b) as to the CRAs' procedures to assure maximum possible accuracy, as well as Section 1681i as to the CRA's procedures to investigate disputes as to a report's accuracy.

Taking his allegations to be true, the Court finds that Perez satisfies the threshold requirement as he has alleged his credit information is not accurate. *See* Compl. ¶¶27, 29; *Khan*, 2019 WL 2492762, at *3. However, Perez fails to set forth any allegations regarding deficiencies in the procedures followed by the CRAs. Because Perez "fail[s] to make any allegations regarding . . . the procedures followed" by Equifax, Experian, and Trans Union, *Nguygen,* 2015 WL 2354308, at *11, his "[t]hreadbare recitals of the elements" do not state a plausible claim for relief under Section 1681e and should be dismissed. *Iqbal,* 556 U.S. at 678.

Because he has alleged his credit information is not accurate, Perez also satisfies the threshold requirement for a claim under § 1681i. *See* Compl. ¶¶27, 29; *Khan*, 2019 WL 2492762, at *3. Additionally, Perez directly disputed the inaccuracies with Experian, Equifax, and Trans Union. Pl. Opp. at 6. Perez's

notification of dispute triggered the CRA defendants' obligation to conduct a "reasonable reinvestigation" and notify the "furnisher" of information that Perez disputed the items.  15 U.S.C. §§ 1681i(a)(1); 1681i(a)(2).  However, Perez states that the CRA defendants took "no action" in response to his disputes regarding his reports.  Pl. Opp. at 6.  Thus, liberally construed, Perez has alleged that the CRA defendants violated the FCRA requirement to reasonably reinvestigate under § 1681i.  To state such a cause of action, Perez must also allege that the CRA defendants were either willful or negligent in their noncompliance with § 1681i.  Accordingly, the Court will now consider whether Perez has satisfied the requirements of § 1681n or § 1681o for willful or negligent noncompliance with § 1681i.

### i.  Perez fails to allege sufficient facts to establish that the CRA defendants' actions were willful or negligent.

To maintain a claim under § 1681i for the failure to reinvestigate the inaccurate reporting of his trade lines, Perez must allege the CRA defendants were willful or negligent in their noncompliance.  The FCRA allows for a cause of action for willful and negligent noncompliance "with any requirement imposed" by the FCRA.  15 U.S.C. §§ 1681n, 1681o.  "In regard to a plaintiff's obligation to allege that a defendant's violation was willful or negligent, various courts have held that, in order to survive a motion to dismiss, the plaintiff's complaint must allege specific facts as to the defendant's mental state" when the defendants committed the violation of the FCRA.  *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 397 (S.D.N.Y. 2014).  Merely stating that the violation was "willful" or "negligent"

without more is insufficient. *Perl v. Plains Com. Bank*, No. 11-CV-7972 (KBF), 2012 WL 760401, at *2 (S.D.N.Y. Mar. 8, 2012); *Perl v. Am. Exp.*, No. 11-CV-6899 (KBF), 2012 WL 178333, at *2 (S.D.N.Y. Jan. 19, 2012) ("While [plaintiff] assert[s] that each [D]efendant's FCRA violation was willful, [he] do[es] so in a conclusory manner in [both] of the complaints. . . . [Plaintiff] ha[s] failed to allege any facts related to [D]efendants' state of mind when they allegedly [violated the FCRA]").

### ii.   Willful and Negligent Noncompliance with the FCPA

#### a. Willfulness

To allege willful noncompliance with the FCRA, a plaintiff must allege facts "related to defendants' state of mind when they allegedly [violated the FCRA]." *Id.* at *2. The requirement of willfulness in this context can be satisfied by evidence of "reckless disregard" for statutory duties. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007). To constitute reckless disregard, a CRA's interpretation of its statutory duties must be "objectively unreasonable," not merely "erroneous." *Id.* at 69.

Perez alleges that Experian, Equifax, and Trans Union have "deliberately and maliciously" misreported his work history and credit accounts. Compl. ¶¶28–29. Throughout his complaint, he alleges the CRA defendants have participated in a "deliberate scheme" with the other defendants and government agencies. Compl. ¶25. In his opposition papers, Perez contends that the CRAs are "in collusion with the inaccurate reporting," of his accounts and have been informed "of their indiscretions and violations." Pl. Opp. at 9, 12.

27

Perez adequately alleges that his credit report contained inaccuracies, but he fails to allege sufficient facts to establish the CRA defendants' actions were willful. While Perez asserts the CRA defendants' violations were "deliberate," he does so in an entirely conclusory manner and does not allege any facts related to the CRA defendants' state of mind when they allegedly failed to meet their statutory requirements. The facts he does assert do not include enough information to allow the Court to draw a reasonable inference that the alleged violations were willful or that the CRA defendants knew that they recklessly disregarded their obligations to reinvestigate the disputed information. *See, e.g.*, *Perl*, 2012 WL 178333, at *3.

### b. Negligence

The Court also construes Perez's complaint as alleging the negligent violation of the FCRA under § 1681o. In his opposition papers, Perez states that "the CRAs should have been able to identify inaccuracies in the information being reported and the agencies reporting this information." Pl. Opp. at 12. However, like his allegations as to the CRA defendants' supposed willfulness, these allegations are pleaded in conclusory fashion, and do not constitute facts from which the Court can infer that the CRA defendants should have known that they were violating the provisions of the FCRA.

Additionally, a complaint alleging a claim for negligent violation of the FCRA under § 1681o must allege actual damages. To do so, the complaint need allege only enough facts demonstrating that the plaintiff suffered an injury entitling him to actual damages. *See, e.g.*, *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014). Perez alleges actual damages in his complaint. *See* Compl. ¶80

("Perez has also been unable to use or increase his existing credit"); ¶82 ("[D]enial of Personal credit card occurred without written notification: Apple Credit, Chase Business Credit, Bank of America business credit, American Express"). These allegations are enough to satisfy Perez's burden to allege actual damages. *See Braun v. Client Servs. Inc.*, 14 F. Supp. 3d at 400 (burden of actual damages satisfied by allegations of "loss of credit, loss of the ability to purchase and benefit from credit, and lowering of credit lines").

Accordingly, the Court recommends dismissing Perez's claims for a violation of § 1681i of the FCRA against the CRA defendants as they are, on the present record, entirely conclusory in nature, but granting him leave to amend his complaint with the requisite facts—to the extent they exist—to give him one final opportunity to make these claims cognizable under the FCRA.

### C. Claims under the Fair Debt Collection Practices Act

Additionally, Perez alleges violations of § 1692e of the FDCPA. Compl. ¶¶53–54. The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequences of which is to harass, oppress, or abuse any person," and from using "any false, deceptive, or misleading representation or means" in connection with the collection of any debt. 15 U.S.C. §§ 1692d, 1692e. "To establish a violation under the FDCPA, three elements must be proven: '(1) the plaintiff [must] be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in

violation of the FDCPA's requirements." *Skvarla v. MRS BPO, LLC*, No. 21-CV-55 (ER), 2021 WL 2941118, at *2 (S.D.N.Y. July 12, 2021) (quoting *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017)).

The term "debt collector" is defined under the FDCPA as a person who, among other requirements, is engaged in any "business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due. . . another." 15 U.S.C. § 1692a(6). By contrast, "'creditors' are not considered 'debt collectors' under [the FDCPA] and [its] provisions . . . do not apply to them." *Reid v. Toyota Motor Credit Corp.*, No. 12-CV-7436 (PAC) (JLC), 2013 WL 1397143, at *6 (S.D.N.Y. Apr. 8, 2013) (quoting *Masudi v. Ford Motor Credit Co.*, No. 07-CV-1082 (CBA) (LB), 2008 WL 2944643, at *3 (E.D.N.Y. July 31, 2013)), *adopted by* 2013 WL 3776201 (July 18, 2013). A "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed" except to the extent the person "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Masudi,* 2008 WL 2944643, at *3 (quoting 15 U.S.C. § 1692a(4)).

The FDCPA prohibits, *inter alia*, conduct whose "natural consequence" is to "harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. To this end, the FDCPA gives a consumer the right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the debt. *Id.* § 1692g(b). The FDCPA also regulates the debt collector's written notice, within five days of its initial communication with the consumer, stating the amount of debt

and the name of the creditor to whom the debt is owed.  *Id.* §§ 1692g(a)(1),

1692g(a)(2).

###### 1. Perez failed to allege that Verizon, Equifax, Experian, and Trans Union are "debt collectors" under the FDCPA.

Perez alleges defendants have violated § 1692e of the FDCPA by using false

representations concerning the character, amount, and legal status of a debt, and by

failing to communicate to the CRA that the debt is disputed.  Compl. ¶53.  In

response, Equifax, Experian, Trans Union, and Verizon argue that Perez failed to

allege that they are debt collectors and that as a result, he has failed to state a

claim against them for violation of the FDCPA.  Joint Defs. Mem. at 11–12; Joint

Defs. Reply at 8.  Perez alleges that Sequium, Verizon, and Citibank serve as a debt

collector "at times."  Pl. Opp. at 14.

Equifax, Experian, and Trans Union are credit reporting agencies that do not

collect debts, and therefore do not fall within the meaning of "debt collector" under

the FDCPA, but instead under the term "consumer reporting agency" as defined in §

1681a(f).  *Compare* 15 U.S.C. 1692a(6) (defining debt collector) *with* 15 U.S.C. §

1681a(f) (defining consumer reporting agency).  *See also Allah v. New Century*

*Mortg. Corp.*, No. 06-CV-3031 (JG), 2006 WL 3196851, at *2 (E.D.N.Y. Nov. 4, 2006)

(company only becomes subject to the FDCPA as debt collector or there is an

"indicat[ion] that a third person is collecting. . . debts" in its name).  Perez does not

allege that the CRA defendants are "debt collectors."  Instead, he alleges that the

defendants "do not always collect debts but hire debt collection companies like

Sequium."  Pl. Opp. at 13.  Because the complaint contains no non-conclusory

allegations that any of the CRA defendants are "debt collectors" or have engaged in any debt collection activity, Perez fails to state a claim under the FDCPA against them. *See Allen v. United Student Aid Funds, Inc.,* No. 17-CV-8192 (VSB), 2018 WL 4680023, at *5 (S.D.N.Y. Sept. 28, 2018) (granting motion to dismiss when plaintiff has not pled sufficient facts to classify defendants as debt collectors).

Similarly, Verizon is not a "debt collector" as Perez's pleadings, if anything, establish that it extends credit, thus creating a debt. *See Vallecastro*, 2014 WL 7185513, at *3; *Mazzei v. Money Store*, 349 F. Supp. 2d 651, 658 (S.D.N.Y. 2004) ("Creditors are generally not considered debt collectors under the FDCPA.") (citing 15 U.S.C. § 1692a(6)(F)). Perez instead alleges that Verizon "hire[s] debt collection companies like Sequium." Pl. Opp. at 13. Further, Perez does not allege that Verizon used the name of a third party in connection with his debt so as to fall within the narrow category of "creditors" who are also considered "debt collectors." *Scalercio-Isenberg v. Citizens Fin. Grp., Inc.*, No. 18-CV-9226 (JGK), 2019 WL 7187247, at *8 (S.D.N.Y. Dec. 26, 2019) (creditors only subjected to the FDCPA if they use third party name to collect debts). Because Verizon is a "creditor" who hires a debt collection company seeking to collect its debts, Perez has failed to allege that Verizon is a "debt collector" within the meaning of the FDCPA. *See Houck v. U.S. Bank, N.A. for Citigroup Mortg. Loan Tr. 2007-AR5*, 689 F. App'x 662, 664 (2d Cir. 2017) (affirming dismissal against creditor under FDCPA).

Sequium, on the other hand, concedes that it falls within the definition of a "debt collector." Sequium Mem. at 5. Accordingly, the Court will analyze whether Perez's claim that Sequium violated the FDCPA is cognizable.

### 2. Perez fails to allege Sequium violated the FDCPA.

Perez alleges that Sequium's failure to issue a debt settlement letter violates § 1692e and § 1692l(a) of the FDCPA. Compl. ¶¶37, 54. Sequium counters that Perez has failed to state a claim under the FDCPA because there is no requirement to issue settlement letters. Sequium Mem. at 6.[12] The Court agrees with Sequium. The FDCPA requires that, *inter alia*, debt collectors issue written collection letters to consumers, with language requirements to ensure the consumers are informed of the amount of debt, name of creditor, and their right to dispute the validity within 30 days but does not require debt collectors to offer settlements. *See* 15 U.S.C. § 1692g. Because Perez has only alleged that he did not receive a settlement letter, he has failed to state a FDCPA claim against Sequium.

In sum, Perez's FDCPA claims against Equifax, Experian, Trans Union, Verizon, and Sequium should all be dismissed for failure to state a claim.

---

[12] Sequium also contends that Perez waived any claims against it by failing to address the arguments in its Memorandum of Law. Sequium Reply at 2. However, "a litigant's failure to oppose a motion does not by itself merit dismissal of a complaint." *Bernheim v. New York City Dep't of Educ.*, No. 19-CV-9723 (VEC) (JLC), 2020 WL 3865119, at *4 (S.D.N.Y. July 9, 2020) (citing *Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010), *adopted by* 2020 WL 4383503 (July 31, 2020). "When presented with an unopposed motion, a court remains obligated to review the pleadings and determine whether there is a sufficient basis for granting the motion." *Id.* (citing *Goldberg*, 599 F.3d at 183).

### III.  CONCLUSION

For the foregoing reasons, the Court recommends that the following claims be dismissed with prejudice:

1) Perez's claims under 15 U.S.C. § 1681s-2(a);

2) Perez's claims under 15 U.S.C. § 1681s-2(b) against Equifax, Experian, and Trans Union; and

3) Perez's claims under the FDCPA.

The Court recommends that the following claims be dismissed without prejudice, so that Perez may replead them within thirty (30) days of the Court's decision:

1) Perez's claims under 15 U.S.C. § 1681s-2(b) against Verizon and Sequium;

2) Perez's claims under the FCRA against Equifax, Experian, and Trans Union related to the reporting of his employment history; and

3) Perez's claims under 15 U.S.C. § 1681i against Equifax, Experian, and Trans Union.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer,

United States Courthouse, 40 Foley Square, New York, New York.  Any requests for

an extension of time for filing objections must be directed to Judge Engelmayer.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS**

**WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE**

**APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,*

*Brittingham, Gladd & Garwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: October 14, 2021
        New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

35